UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAVAR L. GREEN,

                Petitioner,         **No. 09-CV-6416(MAT)**

    -vs-                       **DECISION AND ORDER**

JAMES T. CONWAY
Superintendent of the Attica
Correctional Facility,

                Respondent.
_____

## I.   Introduction

Lavar L. Green ("Green" or "Petitioner") has filed a <u>pro</u> <u>se</u> habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. Petitioner is incarcerated pursuant to a judgment of conviction entered against him on December 17, 2004, following a jury trial in Monroe County Court on several counts of robbery and assault.

## II.   Factual Background and Procedural History

By an indictment filed on April 27, 2004, Green was charged with seven offenses which occurred on March 21, 2004: (1) first degree robbery (N.Y. Penal Law ("P.L.") § 160.15(3)) for forcibly stealing money and a chain from Theodus Gilley ("Gilley") while using a crowbar; (2) second degree robbery in the second degree (P.L. § 160.10(1) for forcibly stealing money from Gilley while aided by another person actually present; (3) second degree robbery

(P.L. § 160.10(2)(a) for forcibly stealing property from, and physically injuring, Gilley in the course of a crime; (4) first degree robbery (P.L. § 160.15(3) for forcibly stealing a silver chain from John N. Carley ("Carley") while using a crowbar; (5) second degree robbery (P.L. § 160.10(1) for forcibly stealing property from Carley while aided by another person actually present; (6) second degree assault (P.L. § 120.05(2)) for causing physical injury to Gilley by means of a dangerous instrument, specifically a crowbar; and (7) second degree assault (P.L. § 120.05(6)) for causing physical injury to Gilley in the course of, and in furtherance of, the commission of a robbery.

Green entered pleas of not guilty and a jury trial commenced on August 17, 2004. Following is a summary of the pertinent evidence presented at trial.

Carley testified that on March 21, 2004, at about 2:45 a.m., he and his friend Gilley went to Country Sweet restaurant after being out at a hip-hop club earlier that evening. Carley and Gilley had driven there in separate cars. Melvin Scott ("Scott"), Carley's cousin, had too much to drink and was "out" in the front passenger's seat of Carley's car. Scott did not go into Country Sweet with Carley and Gilley.

Carley and Gilley were in the restaurant for about 25 to 30 minutes. Carley testified that Petitioner was inside the restaurant as well, and was giving him "funny looks". When Carley returned to

his car, he noticed three men inside of it-one in the front driver's seat, one in the front passenger's seat, and one in the back seat. One of the men "looking for stuff" in his car was Petitioner. Twice Carley asked, "What are you doing in my vehicle?" The men did not respond.

As Carley approached the car, one of the men snatched a necklace from Carley's neck. Carley began fighting with that individual. The robber "broke free" from Carley, who then went into his trunk to get a crowbar. Everybody "scattered" and Carley began chasing the man (not Petitioner) who had stolen his chain.

Eventually, Carley had the man pinned against a car, and the man began calling for his friend. Carley by this point had dropped the crowbar and he let the man go. Carley then saw Green use the crowbar to hit Gilley in the back of the head. Carley grabbed Green and pinned him up against a house.

Carley testified that he somehow ended up with the crowbar back in his hands and during the struggle with Green, he (Carley) hit Green in self-defense. Carley then grabbed Green and dragged him back to Country Sweet, after which the police arrived. Carley saw a bloody laceration about two inches long on Gilley's head.

Gilley, the other victim, testified that when he and Carley left Country Sweet, they saw "a whole bunch of people in [Carley]'s car." Gilley thought they knew Scott, who was still passed out in

the front seat. Gilley walked up and said, "What's going on?" Then, Gilley, recalled, they all "started fighting".

According to Gilley, two of the men jumped on him and one of them jumped on Carley. Gilley stated that while they were fighting, the men demanded money. Gilley testified that after they took his money, they all ran off. Gilley and Carley both chased after Green. Gilley testified that they caught Green and brought him back to Country Sweet.

Gilley testified that Green was one of the men who had jumped him. Gilley was hit with a crowbar or "something", but he did see the person who hit him. As a result of being hit, Gilley had to go to the hospital; his wound required three surgical staples, and he had to miss three days of work.

Rochester Police Department Officer Thomas Shaw was working marked patrol on March 21, 2004. At about 3 a.m., Officer Shaw responded to Country Sweet in response to a call regarding a large fight possibly involving a gun. When he arrived, Officer Shaw saw three individual up against a fence, fighting.

Officer Shaw saw something "flashing" (i.e., the crowbar), and he yelled out, "[D]rop it, drop it!" Officer Shaw could not determine who had the crowbar, however.

As the result of his on-scene investigation, Officer Shaw took Green into custody. Green told Officer Shaw that the men had tried to rob items from his car, which was parked in the middle of

the parking lot behind Country Sweet, blocking traffic. The car's doors were open and the engine was running. When responding Officer Devincentis looked inside the car, he observed several music CDs and a stereo system on the passenger seat. On the driver's side seat, Officer Devincentis saw an open wallet bearing a vehicle registration in Gilley's name.

Upon searching Green, Officer Shaw found $251 in cash. Green said that it was his money and offered a pay stub for $250 as proof. Officer Shaw observed that Green had a small cut on the top of his head toward his hairline and that Gilley had a laceration on the top of his head which was bleeding.

At the close of the prosecution's proof, defense counsel moved for a trial order of dismissal as to each count. The prosecution conceded that there was no evidence as to count four, charging Green with first degree robbery for forcibly stealing a silver chain from Carley. The trial court accordingly dismissed count four.

Green testified in his own behalf that he had $250 in cash on him that evening because he had just cashed his check from work. On his way home from the Bay & Goodman bar, he stopped at Country Sweet to get something to eat and parked in the back parking lot. While at the restaurant, Green noticed two people walk in who were kind of loud and doing a lot of laughing. Green thought they were "pretty drunk".

After he got his food, he went out to his car. Green started his car, but realized that he forgot his drink and went back inside to get his drink. When Green came back outside, he noticed that his car had been moved and that the doors were open. Green heard someone say, "Yo, he got a gun." Green noticed that one of the men who had testified against him (i.e., Carley or Gilley) had something in his hands which appeared to be a gun. Green ducked for cover.

When Green looked up, he saw two men chasing another man. Green ran in that direction, because he had seen one of the men who had just been in his car. When Green got to them, someone grabbed him. Green asked him, "Why are you letting them go? They just tried to rob me." The men said, "No, you were with them," and started hitting Green in the head and leg with the crowbar. A couple of minutes later the police arrived.

Green testified that he did not do anything to help anyone rob Carley or Gilley. He conceded that he had a prior criminal history, having been convicted on May 12, 2000, of one count of possession of a firearm in federal court to which he sentenced to four years in federal prison. The underlying facts were that on September 9, 1999, the police pulled Green over and during a pat-frisk, found a semi-automatic .25 caliber handgun with the serial number defaced, secreted in Green's boot. Green denied that the gun was his, but

conceded that he had purchased it for $200 and had hidden it from the police.

At the close of the defense case, trial counsel renewed his motion for trial order of dismissal with regard to counts 1, 4, and 6, on the basis that the alleged weapon was not really a crowbar but rather was a lug-nut wrench. The trial court denied the motion.

On August 19, 2004, the jury convicted Green of all the remaining counts. On December 17, 2004, the trial court sentenced Green, as a second violent felony offender, to an aggregate determinate term of eighteen years.

Petitioner's direct appeal and subsequent motion to vacate the judgment were unsuccessful. This timely[1] habeas petition followed. For the reasons that follow, the petition is dismissed.

## III. General Legal Standard Applicable on Habeas Corpus Review

A petitioner in custody pursuant to a state court judgment is entitled to habeas relief only if he can demonstrate that his detention violates the United States Constitution, federal laws, or treaties of the United States. 28 U.S.C. § 2254(a). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if a state court adjudicates a petitioner's federal claim on the

---

[1]

Respondent's attorney persists in overlooking the prison mailbox rule, see Houston v. Lack, 487 U.S. 266, 276 (1988), which deems litigation papers mailed by a pro se prisoner to the clerk of the court as "filed" the moment the papers are turned over to prison authorities for posting to the court through the prison log system. Using Respondent's calculations, the petition is clearly timely under the prison mailbox rule. Respondent's attorney is advised to take into account the prison mailbox rule before making arguments regarding untimeliness in future habeas cases.

merits, a federal habeas court must defer to the state court's determination, unless the state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

## IV. Analysis of the Petition

### A. Ground One: Insufficiency of the Evidence

Petitioner challenges his convictions for robbery and assault on the grounds that there was legally insufficient evidence as to the elements of (1) using a dangerous instrument; (2) forcible stealing; and (3) physical injury. On direct appeal, the Fourth Department held that Green had failed to preserve these contentions for review and, in any event, they were without merit. People v. Green, 48 A.D.3d 1245, 1245 (App. Div. 4th Dept. 2008) (citing, inter alia, People v. Gray, 86 N.Y.2d 10, 19 (N.Y. 1995).

As Respondent argues, the claim is procedurally defaulted because the Fourth Department relied upon an adequate and independent state ground to dismiss it. See Coleman v. Thompson, 501 U.S. 722, 729 (1991) (A habeas court may not review a federal issue when, as here, the latest state court's ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment.").

-8-

Where a state court holding contains a plain statement that a claim is procedurally barred, the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision). Thus, when a state court says, as the Fourth Department did in Green's case, that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, the claim is not preserved. Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996).

Only a "firmly established and regularly followed state practice" may be interposed by a state to prevent subsequent review of a federal constitutional claim. James v. Kentucky, 466 U.S. 341, 348-49 (1984). A state preservation rule will be deemed adequate "if it is . . . firmly established and regularly followed by the state." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir.1999). "[E]ven though a rule generally might be considered firmly established and regularly followed, considered in the specific circumstances of a case, it still might be inadequate to preclude federal review, if its application would be 'exorbitant,' that is to say, an arid 'ritual . . . [that] would further no perceivable state interest,'"

-9-

Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007) (quoting Lee v. Kemna, 534 U.S. 362, 366 (2002)).

Under New York law, an objection to the legal sufficiency of the evidence takes the form of a motion to dismiss. People v. Thomas, 36 N.Y.2d 514, 369 N.Y.S.2d 645, 330 N.E.2d 609, 610 (N.Y.1975). The motion must be made in order for an insufficient evidence claim to be preserved for review, People v. Bynum, 70 N.Y.2d 858, 523 N.Y.S.2d 492, 518 N.E.2d 4 (N.Y.1987), and the motion must be made "at the close of the People's case." Thomas, 369 N.Y.S.2d 645, 330 N.E.2d 609. New York courts have consistently held that a general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged. People v. Gray, 86 N.Y.2d at 20–22.

The New York procedural rule applied by the Fourth Department in Petitioner's case–that a defendant must preserve a claim of legally insufficient evidence by making a timely and specific motion for a trial order of dismissal–has been recognized by habeas courts in this Circuit as such a firmly established and regularly followed rule. E.g., Baker v. Kirkpatrick, 768 F. Supp.2d 493, 500 (W.D.N.Y. 2011) (holding that Appellate Division's reliance on People v. Gray, 86 N.Y.2d at 19, to dismiss insufficiency-of-the-evidence claim as unpreserved was an adequate and independent state ground); see also Garcia v. Lewis, 188 F.3d

71, 79 82 (2d Cir. 1999) (recognizing that New York has a well-established preservation rule that is regularly followed in a number of contexts).

Furthermore, the rule was not exorbitantly or arbitrarily applied in Green's particular case. Although counsel moved for a trial order of dismissal on all counts after the prosecution's proof, he was required to renew that request after putting on an affirmative defense case. When trial counsel did make a renewed motion, he confined it to a single legal basis (the definition of crowbar versus lug-nut wrench), and did not assert the grounds for legal-insufficiency later raised on direct appeal. See Garvey v. Duncan, 485 F.3d 709, 714-15 (2d Cir. 2007) ("A general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error.").

In accordance with New York case law, application of the state's preservation rule is "adequate [in Green's case]—i.e., firmly established and regularly followed." Garvey, 497 F.3d at 219. Under the circumstances, the Fourth Department relied upon a state ground that was both independent of the federal question and adequate to support the judgment when it rejected Green's insufficiency-of-the-evidence claims based upon the lack of a

specific objection. <u>Accord</u>, <u>e.g.</u>, <u>Scission v. Lempke</u>, 784 F. Supp.2d 237, 244 (W.D.N.Y. 2011).

Petitioner can obtain federal habeas review of his procedurally defaulted claim only if he demonstrates either (1) cause for the default and actual prejudice; or (2) that this Court's failure to consider his claim would result in a fundamental miscarriage of justice because Petitioner is actually innocent. <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). On this record, Petitioner is unable to make the required showing of cause and prejudice, or that he is actually innocent. Thus, the claim remains subject to an unexcused procedural default and is dismissed on that basis.

   **B.    Ground Two: Legal Insufficiency of the Evidence Presented to the Grand Jury**

Green contends that the evidence presented to the grand jury was legally insufficient to support the indictment. Claims of error in New York grand jury proceedings, including allegedly insufficient evidence to indict, are not cognizable in habeas corpus proceedings where the petitioner has been convicted by a petit jury. <u>See</u> <u>Lopez v. Riley</u>, 865 F.2d 30 (2d Cir.1989) (holding that habeas corpus petitioner's claim of insufficiency of grand jury evidence may not be raised where a petit jury heard all relevant evidence and convicted). "'[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that

-12-

they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.'" Lopez, 865 F.2d at 32 (quoting United States v. Mechanik, 475 U.S. 66, 70 (1986) (footnote omitted, and alteration in, Lopez). Since Petitioner was convicted by a jury holding the prosecution to the reasonable doubt standard of proof, his claim of insufficiency of evidence for the grand jury to indict him is not cognizable in a habeas corpus proceeding. See Lopez, 865 F.2d at 32.

### C. Ground Three: Verdict Against the Weight of the Evidence

Green's claim regarding the weight of the evidence does not present a federal constitutional question cognizable in a federal habeas proceeding. A "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). A "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, while legal insufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (N.Y. 1987); accord, e.g., People v. Romero, 7 N.Y.3d 633, 642-43 (N.Y. 2006).

Because Green's weight of the evidence claim implicates only state law, it is not cognizable in this federal habeas proceeding. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review is not available where there is simply an alleged error of state law). Therefore, it is dismissed as not cognizable. See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255 (1923); Scission v. Lempke, 784 F. Supp.2d at 243 (dismissing habeas petitioner's claim that the verdict was against the weight of the evidence as not cognizable).

### D. Ground Five: Erroneous Admission of Testimony Concerning Uncharged Crimes

Green contends that the trial court erred in allowing Gilley to testify about prior uncharged criminal acts allegedly committed by him–namely, the discovery of certain items belonging to Gilley found in Green's car (a satellite radio, a wallet, and some music CD's). T.139-40.[2] Defense counsel objected to this testimony on the basis that Green had not been charged with theft of items from Gilley's car and that the prosecution had not provided notice of its intention to use prior bad acts evidence. The trial court ruled

---

[2]     Citations to "T.__" refer to pages of the trial transcript.

that the testimony was "inextricably intertwined" with the circumstances of the crimes charged, and therefore admissible. T.141. The trial court offered to issue a "<u>Molineux</u> charge",[3] to which defense counsel assented. The trial court issued a comprehensive and correct limiting charge immediately after Gilley testified concerning his stolen property. <u>See</u> T.141-42. Defense counsel raised no objection to the charge given, and did not object further to the evidentiary ruling.

On appeal, Green argued that this evidentiary ruling warranted reversal because the prosecution failed to properly specify the prior bad acts at issue, which were neither relevant nor material to the issue in dispute and were unduly prejudicial. Respondent argued that the claim had been waived, forfeited, and abandoned because trial counsel assented to the trial court's issuance of a limiting instruction, and did not lodge any further objection after the instruction was given. <u>See</u>, <u>e.g.</u>, <u>People v. Kelly</u>, 11 A.D.3d 133, 148 (App. Div. 1st Dept. 2004) (defendant's consent to the court's curative instruction as an appropriate remedy for any impropriety arising from the jury-room demonstration which allegedly violated his constitutional right to be present). The Fourth Department summarily rejected this argument as without merit. This constitutes an adjudication on the merits, and is subject to AEDPA deference. <u>See</u> <u>Murden v. Artuz</u>, 497 F.3d 178, 198

---

[3]     <u>People v. Molineux</u>, 168 N.Y. 264, 61 N.E. 286 (N.Y. 1901).

(2d Cir. 2007) (holding that even where state court fails to precisely specify the claims deemed meritless and why those claims are meritless, "an unexplained ruling on the merits is . . . entitled to AEDPA deference").

Federal courts, generally, do not consider challenges to a state court's evidentiary rulings. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions ."). Even if there was error, not all evidentiary errors are of a constitutional dimension, as the improper admission of evidence against a defendant is not a violation of due process unless the evidence "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" Dowling v. United States, 493 U.S. 342, 352 (1990) (citation omitted); accord, e.g., Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (Even where a petitioner describes an evidentiary error as unduly prejudicial, it must be recognized that "not all erroneous admissions of [unduly prejudicial] evidence are errors of constitutional dimension.").

The inquiry into potential errors of state evidentiary law at the trial level assists the reviewing court in "ascertain[ing] whether the appellate division acted within the limits of what is objectively reasonable." Jones v. Stinson, 229 F.3d 112, 120 (2d Cir. 2000). In People v. Molineux, 168 N.Y. at 293, the New York Court of Appeals discussed the exception to the general bar against

prior bad acts, holding that such evidence is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. Accord, e.g., People v. Ventimiglia, 52 N.Y.2d 350, 361 (N.Y. 1981)). Prior bad acts evidence is also admissible to complete the narrative of the crime charged, e.g., People v. Gines, 36 N.Y.2d 932 (N.Y. 1975), or if it is "inextricably intertwined with the crime charged, provided its probative value outweighs any possible prejudice[,]" People v. Tabora, 139 A.D.2d 540, 540 (App. Div. 2d Dept. 1988) (citing People v. Vails, 43 N.Y.2d 364, 368-69 (N.Y. 1977)).

Here, the Court cannot say that the trial court abused its discretion in admitting testimony that the police discovered items stolen from Gilley's car in Petitioner's car. Such evidence was part and parcel of the criminal incident and ensuing investigation, and necessary to present a complete narrative to the jury. See People v. Brown, 223 A.D.2d 720, 721 (App. Div. 2d Dept. 1996) (holding that evidence of defendant's prior uncharged crime in which he robbed another person immediately prior to attempting to rob the victim was properly admitted since it was "inextricably interwoven" with the events which led up to the defendant's arrest, and it was necessary to complete the narrative of the crime); People v. Quesada, 118 A.D.2d 604, 604 (App. Div. 2d Dept. 1986)

(evidence regarding theft which immediately preceded and precipitated the incident which is the subject of the case at bar was inextricably interwoven with the subsequent events culminating in the defendant's arrest; the trial court properly admitted the testimony concerning the theft in order that the jury hear a complete narrative of the criminal transaction charged). The evidence that items stolen from Gilley were found in Petitioner's car also was material and relevant to rebut Petitioner's version of events, in which he claimed not to have been involved in any robberies that evening. Green therefore has not shown an error of state evidentiary law, let alone an error of constitutional magnitude. See Dey v. Scully, 952 F. Supp. 957, 971 (E.D.N.Y. 1997) (The Court's conclusion that the trial court erred does not end the inquiry. The Court must also determine that the error was of constitutional dimension because "federal habeas corpus review of state criminal proceedings under 28 U.S.C. § 2254 is limited to errors of constitutional magnitude.") (quotation omtitted).

Moreover, "the issue of whether an admission of uncharged crimes can ever constitute a violation of the Due Process Clause has not been decided by the Supreme Court." Jones v. Conway, 442 F. Supp.2d 113, 131 (S.D.N.Y. 2006) (citing Estelle v. McGuire, 502 U.S. at 75 n. 5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged

crime.")). Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Fourth Department's rejection of this claim cannot be said to have been contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accord, e.g., Jones, 442 F. Supp.2d at 131.

### E.   Ground Five: Prosecutorial Misconduct

Green contends that certain comments by the prosecutor during summation deprived him of a fundamentally fair trial. On direct appeal, the Fourth Department held that Green had failed to preserve that contention for appellate review but, in any event, it was without merit "inasmuch as the prosecutor's comments were either a fair response to defense counsel's summation or were fair comment on the evidence[.]" People v. Green, 48 A.D.3d at 1245-46 (citations omitted).

As Respondent argues, the claim is procedurally defaulted because the Fourth Department relied upon an adequate and independent state ground to dismiss it. Coleman v. Thompson, 501 U.S. at 729. Where a state court holding contains a plain statement that a claim is procedurally barred, the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. Harris v. Reed, 489 U.S. at 264 n. 10. Thus, when a state court says, as the Fourth Department did in Green's case, that a claim is "not preserved for appellate review"

and then rules "in any event" on the merits, such a claim is not preserved. Glenn v. Bartlett, 98 F.3d at 724-25.

Although only a "firmly established and regularly followed state practice" may be interposed by a state to prevent subsequent review of a federal constitutional claim, James v. Kentucky, 466 U.S. at 348-49, the New York procedural rule applied by the Fourth Department in Petitioner's case-that a defendant must preserve a claim of prosecutorial misconduct by making a timely and specific objection to allegedly improper remarks[4]-has been recognized as such a firmly established and regularly followed rule. E.g., Glenn v. Bartlett, 98 F.3d at 724-25 (finding that failure to object to prosecutor's statements in opening and on cross-examination constituted adequate and independent state ground); see generally, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011) ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule.") (citations omitted).

Petitioner can obtain federal habeas review of his procedurally defaulted claim only if he demonstrates either (1) cause for the default and actual prejudice; or (2) that this Court's failure to consider his claim would result in a fundamental

---

[4]   "New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling 'at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same.'" Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011) (quoting   N.Y. Crim. Proc. Law § 470.05(2) (alteration in Whitley)).

miscarriage of justice because Petitioner is actually innocent. Murray v. Carrier, 477 U.S. 478, 496 (1986). On this record, Petitioner is unable to make the required showing of cause and prejudice, or that he is actually innocent. Thus, the claim remains subject to an unexcused procedural default and is dismissed on that basis.

### F.   Ground Six: Ineffective Assistance of Trial Counsel

#### 1.   Overview of Claim and Possible Procedural Bar

Green contends that trial counsel committed a number of errors which were so egregious that they resulted in his being deprived of the effective assistance guaranteed to him under the Sixth Amendment. On direct appeal, the Fourth Department disagreed, finding that as "the evidence, the law, and the circumstances of [this] case, viewed in totality and as of the time of the representation, reveal that [defense counsel] provided meaningful representation[.]" People v. Green, 48 A.D.3d at 1246 (quoting People v. Baldi, 54 N.Y.2d 137, 147 (N.Y. 1981) (alterations in Green)). Green raised the same contentions in a C.P.L. § 440.10 motion to vacate the judgment, and the trial court held that they were without merit and, moreover, procedurally barred under C.P.L. § 440.10(2)(a) because they had been argued and decided on direct appeal.

Respondent argues that the claims are procedurally barred because the state court relied upon an adequate and independent

state ground—namely, C.P.L. § 440.10(2)(a), to dismiss the ineffective assistance claims. "District Courts within the Second Circuit disagree as to whether a state court's reliance on C.P.L. § 440.10(2)(a) in denying a constitutional claim results in the procedural default of that claim on federal habeas review." Williams v. Duncan, No. 9:03-CV-568 (LEK/RFT), 2007 WL 2177075, at *19 (N.D.N.Y. July 27, 2007) (collecting cases). Given these diverging views, and the fact that Green properly raised the ineffective assistance claims on direct appeal and obtained a merits-adjudication of them, the Court will review the substance of the claims. See Williams, 2007 WL 2177075, at *19 (citations omitted).

### 2.    Analysis of Counsel's Performance Under Strickland

In assessing a claim of ineffective assistance of counsel, the Court utilizes the two-pronged standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687–88, 693–94 (1984), which requires showing both that the attorney's conduct fell below an objective standard of reasonableness under prevailing professional norms, and that but for the unprofessional conduct, there was a reasonable probability of a more favorable result. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700.

Green contends that defense counsel (1) failed to object to the prosecutor referring to him as a "double predicate felon" during summation; (2) failed to make a detailed trial order of dismissal although there was no evidence of a physical injury in this case and absolutely no evidence that Green robbed Carley; (3) failed to move for a mistrial when the prosecution introduced unnoticed and highly prejudicial uncharged act evidence; (4) did not ask the trial court to define "immediate flight" for the jury; and (5) failed to object at sentencing when Green was sentenced as a second violent felony offender.

With regard to the prosecutor's comment about Green's criminal history, trial counsel's failure to preserve the claim by objecting did not prejudice Green since the Fourth Department considered the merits of his prosecutorial misconduct claim, notwithstanding the lack of preservation.

Similarly, because the Fourth Department considered the merits of his legal-insufficiency claims, notwithstanding the lack of preservation, trial counsel's failure to make a sufficiently detailed motion for a trial order of dismissal did not prejudice Green.

Trial counsel's failure to move for a mistrial based upon the alleged evidentiary error was not prejudicial because there is no reasonably probability that such a motion would have been

successful. As discussed above, the evidentiary ruling was not an abuse of the trial court's discretion.

Petitioner's claim that trial counsel should have requested a jury instruction on "immediate flight" fails to articulate any basis on which further definition of that term was required in order to guarantee his right to a fair trial. Thus, the Court cannot see how trial counsel was deficient or how this omission prejudiced Green.

Finally, Petitioner's contention that trial counsel' erred in failing to object to his adjudication as a second violent felony offender lacks merit. As discussed below, Petitioner's sentencing proceeding was not improper. Therefore, trial counsel's failure to object did not prejudice Petitioner.

### G. Ground Seven: Erroneous Adjudication of Petitioner as a Second Violent Felony Offender

Petitioner contends that the trial court improperly adjudicated him as a second violent felony offender. Respondent argues that this claim is procedurally defaulted because the Fourth Department relied upon an adequate and independent state ground to dismiss it-namely, that trial counsel failed to preserve the argument by registering an objection either to the second violent felony offender information filed by the prosecution or to the actual adjudication and sentencing. Respondent appears to be correct. However, because Petitioner argued that trial counsel was ineffective in failing to preserve the recidivist sentencing

argument for appeal, the Court will briefly address the merits of the sentencing claim.

In order to qualify as a predicate violent felony for purposes of the second violent felony offender sentencing scheme, the conviction must (1) also be a violent felony under New York state law; (2) be accompanied by a minimum sentence of imprisonment in excess of one year; and (3) be less than ten years-old as of the date of the commission of the new crime, excluding incarcerated time. In addition, the sentence for the predicate felony must have been imposed before the commission of the instant New York violent felony. N.Y. Penal Law § 70.04(1)(b).

The only aspect of his federal firearms-possession conviction which Green contests is whether or not it would be a violent felony in New York state. The federal statute at issue provides in pertinent part as follows:

> (g) It shall be unlawful for any person—
>     (1) who has been convicted in any court of, a crime
>     punishable by imprisonment for a term exceeding one
>     year;
> . . .
> to ship or transport in interstate or foreign commerce,
> or possess in or affecting commerce, any firearm or
> ammunition; or to receive any firearm or ammunition which
> has been shipped or transported in interstate or foreign
> commerce.

18 U.S.C. § 922(g). At trial, Petitioner provided the factual basis for § 922(g) conviction, namely, that the police found a semi-automatic .25 caliber handgun with the serial number defaced hidden in his boot. Petitioner's federal conviction under 18 U.S.C.

§ 922(g) corresponds to Criminal Possession of a Firearm in the Third Degree, a class D violent felony under New York law. <u>See</u> N.Y. Penal Law §§ 265.02(5)(ii); 70.02(1)(c).

P.L. § 265.02 provides in relevant part that "[a] person is guilty of criminal possession of a weapon in the third degree when: . . . (5) . . (ii) such person possesses a firearm and has been previously convicted of a felony or a class A misdemeanor defined in this chapter within the five years immediately preceding the commission of the offense and such possession did not take place in the person's home or place of business[.]" N.Y. Penal Law § 265.02(5)(ii). The facts of Green's federal conviction, in conjunction with his criminal history, fulfill the elements of P.L. § 265.02(5)(ii). In particular, five years prior to Green's federal conviction, he was convicted on October 14, 1998, of fifth degree criminal sale of a controlled substance, a class D felony carrying a minimum of one year in prison and a maximum of seven years. <u>See</u> N.Y. Penal Law §§ 220.06; 70.00(2)(d) & (3)(b). In addition, Green did not possess the gun which was the subject of the federal conviction in either his home or business but rather while he was traveling in a car. Consequently, the trial court properly relied upon Green's conviction under 18 U.S.C. § 922(g), which corresponded to N.Y. Penal Law § 265.02(5)(ii), as a predicate felony for purposes of sentencing Green as a second violent felony offender.

### H.    Ground Eight: Harsh and Excessive Sentence

Green challenges the length of his prison terms, arguing that the trial court abused its discretion and imposed sentences which were harsh and excessive. Green concedes, however, that all of his concurrent sentences were less than the maximum permitted by law. In particular, the longest sentence imposed was 18 years, although the statutory maximum was 25 years. See N.Y. Penal Law §§ 70.02(1)(a)-(c) & (3)(a)-(c); 120.05(2) & (6); 160.10(1) & (2)(A); 160.15(3). Thus, the trial court did demonstrate leniency in sentencing Green.

In any event, this claim does not present a federal constitutional question cognizable on habeas review because Green's individual and aggregate sentences were well within the limits set by New York's Penal Law. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."); see also Bellavia v. Fogg, 613 F.2d 369, 373 (2d Cir. 1979) (mandatory aggregate sentence of 15 years to life imprisonment imposed upon defendant, who was occupant of an automobile from which a large quantity of cocaine was removed prior to sale to undercover officers, did not constitute cruel and unusual punishment).

**V.    Conclusion**

For the reasons stated above, Lavar L. Green's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition (Docket No. 1) is dismissed. Because Green has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability as to any of the issues asserted in the petition. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

DATED:    November 18, 2011
          Rochester, New York

-28-